Farnum, C. J.
— This action was commenced in a justice’s court to recover damages of the defendant on account of fraudulent statements and representations alleged to have been made by the defendant to the plaintiff to induce, and which did induce him and another to sell the defendant certain personal property and take in exchange therefor the promissory note of Enos Emerson.
The substance of the alleged statements made by the defendant are set forth in the complaint, as follows : “ The defendant, stated and represented that Enos Emerson, the maker of said *102 note, was solvent and responsible and had a farm worth six thousand dollars, and that the note could be collected from him.”
The plaintiff to establish his case upon this branch of it, testified : “ I asked him, the defendant, if he knew anything about the responsibility of the maker (of the note); I did not know Enos Emerson at the time ; he said he owned a farm in Bolivar for which he had paid $5,000 or $6,000 in cash, and that he was perfectly responsible ; he said he was good and the note was perfectly good by reason of his owning the farm; Enos Emerson did not have a farm worth $5,000 or $6,000, in Bolivar, at that time.”
The plaintiff also called Fred B. Doty as a witness, who testified: “ Campbell stated that Emerson had lately purchased and then owned a farm in the town of Bolivar, B. Y., for which he had paid $5,000 or $6,000, in cash, and that Mr. Emerson was perfectly responsible for the amount of the note, and for that matter for the value of all the wagons we had, and that the note would be paid at maturity.”
Enos Emerson was then sworn as a witness for the plaintiff, and had testified that on April 5, 1883 (the date of the alleged representation by defendant), he was and ever since had been insolvent, when James M. Curtiss, an attorney of Bolivar, B. Y., appeared in court before the justice and asked to interpose and offered an answer in writing, which offer was refused by the justice. The answer so offered was filed by the justice, and upon appeal returned with the proper process and proceedings had before him. The answer contained a general denial that Emerson was solvent and able to pay all his debts ; that Emerson confessed a judgment upon the note in question before a justice of the peace on the 6th day of -,1884, for $216.65. The witness Emerson then continued with his testimony, and stated “April 20, 1883, I did not own a farm worth $5,000 or $6000 in the town of Bolivar.
I have recited all the testimony given upon the trial bearing upon the statement of the defendant, and its falsity. Taking *103 all the testimony as most favorable to the plaintiff, it appears that the defendant stated Emerson had a farm in Bolivar for which he had paid $5,000 or $6,000 ; that the note was good, by reason of Emerson owning the farm, and that Emerson was solvent and responsible.
There is no proof to correspond with the allegation of the complaint, that the defendant represented that Emerson had a farm worth $5,000 or $6,000, and there is no proof but that the representation of the defendant was true, that Emerson had paid $5,000 or $6,000 for it, so that all the representation the plaintiff can rely upon to maintain his action is, that the defendant stated Emerson was solvent and responsible. Is this such a representation, that if false, the plaintiff will be entitled to recover? There is no direct evidence that the defendant knew this statement to be untrue. Then is it established that the defendant assumed or intended to convey the impression that he had actual knowledge of the solvency of Emerson, though conscious that he had no such knowledge.
Taking the statement as a whole, there being no evidence but that Emerson had paid $5,000 or $6,000 for the farm in Bolivar, can it be said that the addition that Emerson was solvent and responsible was more than the expression of an opinion based upon the fact that Emerson had paid $5,000 or $6,000 for the farm.
rj The respondent has cited numerous authorities contending that they are in point and sustain this judgment. In Bishop agt. Davis (9 Hun, 342), stress is laid upon the point that the representations in that case were minute, positive, unconditional and unequivocal, and were such that from their very nature, the defendant assumed to have knowledge upon the subject of which he spoke. The authorities bearing upon this question are collated in Indianapolis P. & C. R. R. Co. agt. Tyng (2 Hun, 311), and at page 321 the court say: “ It is quite apparent from the facts established, that the defendant, if he did not know of the falsity of the statements made, at least assumed, or intended to convey the impression that he had *104 actual knowledge of the truth of the representations as to the condition of the engines, though concious that he had not; ” and in that case the court in speaking of actions for deceit resting on representations of insolvency say (page 321): “ It may he assumed, that when information of that kind is sought) it must necessarily partake of the character of information only and not of knowledge, unless by some special and particular phrase it is intended to be otherwise.”
Viewing the statement of the defendant that Emerson was solvent and responsible, in the light of all that was said, I cannot spell from it that it was more than the expression of an opinion based on the prior statement, and I fail to see where he assumed to speak from knowledge, or where the plaintiff had a right to infer that he did.
Marsh agt. Falken (40 N. Y., 562) was brought to recover damages upon the statement made by the defendant that one “Kahn was perfectly good — good for $17,000 or $18,000 in property in Syracuse, and if I (plaintiff) took Kahn’s note he (defendant) would discount it.”
In delivering the opinion of the court, justice Daniels said (page 567): “ In order to determine whether material representations of actual knowledge of the existence of material facts be deceitfully or fraudulently made, or whether that may be properly and fairly inferred, regard must be had to the transaction in which they are made, and to the subject to which they relate; for, as to many subjects of trade and traffic, the acquisition of such knowledge is common, and, therefore, when imputed by the representations made, it may be reasonably expected to have been intended that the person to whom they may be made should understand that to be their character. As to many other things the possession of actual knowledge is exceedingly rare and exceptional, and when representations are made concerning them, they are usually understood as amounting to no more than the candid and sincere conviction of the person making them. They are expressions of opinion or judgment, rather than absolute *105 representations of fact, and as such are not necessarily fraudu lent, though they afterwards turn out to be wholly unfounded and untrue.” “ The representations relied upon for a recovery in this case related to a matter that could not ordinarily be expected to be within the knowledge of the person making them. There is nothing in the case in any way indicating that the plaintiff had any reason for supposing that the defendant possessed any other knowledge upon the subject concerning which he was applied to for information, than that which one person in business will commonly acquire concerning others in the same business, residing in the same place.” At pages 573 and 574, justice Grover said: “ The plaintiff was entitled to recover, so far as the point under consideration is concerned, if the defendant is to be understood as speaking of his own personal knowledge of the affairs of Kahn in making the statement.” “Notwithstanding the positive form of the reply, I think that the fair presumption is that the defendant intended only to express his firm belief and confident opinion, that such was the pecuniary situation of Kahn; and that he would be so understood, not only by business men in general, but that he was in fact so understood by the plaintiff.”
I have quoted liberally from the opinion written in the Marsh case, for the justices here fully met the argument made in this case by the respondent, and their reasoning is unanswerable. Upon the merits of the case the plaintiff herein must fail upon all the evidence in the case. But on another branch of the case the judgments should be reversed. During the progress of the trial and while the plaintiff was examining one of his witnesses, the defendant appeared before the justice, by his attorney, and asked to he permitted to answer and disprove the case as made by the plaintiff. The justice denied this request. The respondent now insists that this was a matter of discretion with the justice, and cannot be reviewed here. • If it were a matter of discretion then, of course, the decision of that question ought not to be considered upon this appeal.
*106 The respondent cites Jenkins agt. Bowen (21 Wend., 454); Montford agt. Hughes (3 E. D. Smith, 591); Mead agt. Danogh (1 Hilt., 395) and Sammis agt. Brice (4 Denio, 576), as authority supporting the action of the justice. In the cases cited from 3 E. D. Smith, 21 Wendell, and 4 Denio, the defendant failed to appear upon the return day, and upon the adjourned day appeared and offered to plead. In the case in 1 Hilton, upon the return day, after the cause was adjourned and the plaintiff had left the room, the defendant appeared and answered. Each of these cases differs from the one under consideration and do not control this. Here the summons was returnable at one o’clock. The justice returns that he waited a full hour before proceeding with the cause, and further certifies that at half-past two o’clock, or within half an hour from the time eommnenced the trial of the cause, and it seems while all of plaintiff’s witnesses were in the court-room the defendant appeared by counsel and asked to be permitted to answer. This request was denied. Had it been apparent that the answer was not interposed in good faith, and that it was offered for delay, then it might well be said that the justice properly exercised his discretion.
The discretion that is given to a court is a “ judicial discretion,” which must be" exercised according to legal and just rules; it cannot be an arbitrary discretion to be exercised as the court shall arbitrarily decide, overriding the natural rights of a suitor and depriving one of his means of fairly meeting a claim urged against him. The mere statement of the case strikes one as a harsh and unjust ruling. It is not suggested in what way the plaintiff could have been injured or wronged by permitting the defendant to make any legal defense he had. It is possible that the answer might make it necessary for the plaintiff to adjourn the trial, if so, the court had full power to grant an adjournment upon such terms as should be just to all, but this is no ground for denying the defendant the right to make the best defense he had.
In Ryan agt. Lewis (3 Hun, 429), justice Müllin used *107 this language: “But, assuming that the allowance of an amendment rests in the discretion of the court, yet the refusal in this case was a gross abuse of the discretion, and the only remedy of the party is hy appeal. A judicial officer who should refuse leave to a party to amend, when it is apparent that the application is made in good faith, and is absolutely necessary for the protection of his rights, ought to be indicted or removed from his' office.” It is very pointed, yet it may with great propriety be quoted in this case (See, also, Walsh agt. Cornett, 17 Hun, 27, and Wood agt. Shullis, 4 Hun, 309).
There are several other matters urged as error, but in the view above taken of the case it is unnecessary to consider them.
The judgment must be reversed.